535 So.2d 1063 (1988)
Emery L. ATKINS, Bessie D. Atkins & Ruth A. Wimberly, Plaintiffs/Appellees,
v.
Lucille Crane JOHNSON, Calvin Crane, Ulysses Rogers & Lizzie Crane Rogers, Defendants/Appellants.
No. 20037-CA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1988.
*1064 Goff, Caskey, Davis & Fallin by H. Russell Davis, Arcadia, for plaintiffs/appellees.
J. Keith Mullins, Ruston, Martha E. Minnieweather, Bastrop, Kidd & Kidd by Paul Henry Kidd, Monroe, for defendants/appellants.
Before HALL, C.J., and MARVIN and NORRIS, JJ.
HALL, Chief Judge.
Plaintiffs, Emery L. Atkins, Bessie T. Atkins, and Ruth A. Wimberly, filed suit against the defendants, Ulysses Rogers, Lizzie Crane Rogers, Lucille Crane Johnson, and Calvin Crane seeking a gratuitous passage across defendant's property to La. Hwy. 9. Plaintiffs' property is bounded on the north by I-20, on the west and south by other landowners, and on the east by defendants' properties. Plaintiffs' property and defendants' properties were originally one tract of land. Access was gained to the tract from La. Hwy. 9 which now forms the eastern boundary of defendants' properties. The trial court granted the plaintiffs a gratuitous right of passage over the existing black top and dirt road and defendants appeal, arguing primarily that plaintiffs' property is not actually enclosed, that if it is enclosed it was accomplished by a voluntary act of the owner, and that any servitude of passage that may have existed has prescribed due to nonuse for over ten years. We affirm the trial court's ruling in part, reverse in part, and remand for further proceedings.

I.
The community of Bob Crane and Gracie Hemphill Crane acquired the original tract of land containing both plaintiffs' and defendants' properties from T.M. Byrd in 1946. In 1966 Bob Crane sold to Ulysses Rogers and Lizzie Crane Rogers, his son-in-law and daughter, approximately one and one-half acres of the southeast corner of the tract, hereinafter referred to as the "Rogers lot". A copy of a plat of survey of the property at issue is attached as an appendix. Bob Crane died in 1973 and willed to his daughter Lucille Crane Johnson and his grandson Calvin Crane, his interest in the northeast portion of the original tract immediately north of the Rogers lot, hereinafter called the "Crane property". The Rogers lot and the Crane property are 210 feet deep and extend across the entire eastern boundary of the tract, originally 1,050 feet. The original Crane family house and garage are located on the Crane property and a service station is located on the Rogers lot.
The remainder of the tract, approximately 40 acres, was purchased by plaintiffs on August 28, 1985 from the estate of David M. Green at a sheriff sale. Green had acquired the property from William Lynnton Etheridge and James C. Steele, III on October 12, 1983. Etheridge and Steele had acquired an undivided interest in the property from some of Bob Crane's heirs. They provoked a partition by licitation whereby they acquired sole ownership by a sheriff's sale on April 20, 1983.
The original driveway from La. Hwy. 9 to the house and garage was altered when I-20 was constructed in the 1950's or early 1960's. La. Hwy. 9 was moved slightly to the east and elevated to provide an overpass over I-20. The driveway was altered to run from the house south along the elevated portion of La. Hwy. 9, across the northeast corner of the Rogers lot until it connected with La. Hwy. 9. It is along this driveway or road which the trial court granted the plaintiffs a right of passage. The road runs between the house and garage, with the garage being south of the house, and then to a barn located on what is now plaintiffs' property.
Shortly after acquiring the property, plaintiffs began repairing the fences and constructed a new fence along defendants' property line. Plaintiffs placed a gate in that fence to allow them access to the Crane driveway. After plaintiffs had used this access for several months and after they had placed cattle on the 40 acres, the defendants placed a dilapidated piece of farm equipment in front of plaintiffs' gate, *1065 blocking their access. Plaintiffs then attempted to construct an alternate means of access along the Rogers lot and Crane property boundary. However, defendants prevented this also.
Emery L. Atkins, one of the plaintiffs, testified that it was at this time that he sought and obtained access to U.S. Hwy. 80, which is south of plaintiffs' property, from his neighbor to the west, Reeves Tractor Company. Reeves Tractor Company apparently allowed the plaintiffs passage until the company ceased operations. Mr. Atkins then contacted Bobby Joe Quarles in Battle Creek, Michigan, to obtain passage across his property located at plaintiffs' southwest corner. Plaintiffs admit Quarles did allow them passage but only until plaintiffs were able to obtain legal passage. The passage is a dirt road which runs from U.S. Hwy. 80 along the boundary fence of the Quarles property, through a gate, and into the southwest corner of plaintiffs' property. Mr. Atkins' daughter has acquired a one-third undivided interest in the Quarles' property but has been unable to acquire full ownership.
The trial court found that after the partition of a part of the Bob Crane estate, the plaintiffs' property became enclosed, and that plaintiffs were entitled to a gratuitous right of passage under LSA-C.C. Art. 694.[1] The right of passage was to be exercised on the existing black top and dirt road which runs from La. Hwy. 9 to the gate of plaintiffs' property. After the trial and after judgment had been rendered, defendants moved for a new trial and raised the exception of prescription of the servitude of passage because of nonuse. The trial court denied the motion for new trial and overruled the exception of prescription. It is from these rulings that the defendants appeal.

II.
Generally speaking an estate is considered enclosed when it is shut off from access to public roads because it is entirely surrounded by other lands. Finn v. Eoff, 368 So.2d 199 (La.App. 1st Cir.1979). It is undisputed that plaintiff's property is surrounded by other lands on the west, south, and east and by I-20 to which they have no right of access on their northern boundary. Defendants argue that the plaintiffs' property is no longer enclosed because of the existence of the alternate access which plaintiffs now have to U.S. Hwy. 80 across the Quarles property. Plaintiffs argue they were forced by the action of defendants to gain other access to their property to care for the cattle on the property.
A similar situation was encountered in Patin v. Richard, 291 So.2d 879 (La.App. 3d Cir.1974), wherein the plaintiff who sought the right of passage had obtained an alternate access to his property across the adjoining property belonging to his brother-in-law. The brother-in-law neighbor was not a party to the suit and access across his property was gained only after the defendant constructed a fence across the traditional passage. The court determined Mr. Patin's property was in fact enclosed and granted him a gratuitous servitude of passage.
Defendants, Calvin Crane and Ulysses Rogers, testified that there has always been access to plaintiffs' property from U.S. Hwy. 80. However, the registered land surveyor, James Wooten, testified that when he last surveyed the property in November of 1985 there was no gate in the southwest corner of plaintiffs' property and no access to U.S. Hwy. 80. Plaintiff, Emery Atkins, testified the access to U.S. Hwy. 80 across the Quarles property was not acquired until after the previous means of access across defendants' property became obstructed. The trial court found that although plaintiffs' property is near U.S. Hwy. 80, the property "... has no access to a public road." We agree that plaintiffs' property is enclosed within the *1066 meaning of Article 694. The property does not front on a public road. An estate which is entitled to demand a gratuitous servitude under Article 694 does not lose that right when the owners of the enclosed estate secure an informal access across other property after being denied passage across the servient estate. To hold otherwise would be to encourage the owners of servient estates to engage in self-help tactics to reduce lawful burdens upon their estates.
In its reasons for judgment, the trial court stated, "The court finds plaintiffs fit within the provisions of LSA-C.C. Art. 694." The right to demand a gratuitous passage under LSA-C.C. Art. 694 arises only when lands alienated become enclosed as a result of a voluntary alienation of an estate or of a part thereof, or when lands partitioned become enclosed as a result of a partition. A voluntary alienation may be a sale, an exchange, a donation or any other transaction that involves transfer of ownership. A partition may be either amicable or judicial. A. Yiannopoulos, 4 Louisiana Civil Law TreatisePredial Servitudes § 99 (1983).
The first alienation of a part of the original Crane tract occurred in 1966 when Bob Crane sold Ulysses Rogers and Lizzie Crane Rogers their one and one-half acre lot. However, this did not create any enclosure, or potential for enclosure. The Rogers lot and the remainder of the Crane tract each had frontage along Hwy. 9, and, therefore, had access to a public road. Accordingly, the Rogers lot does not owe a gratuitous Art. 694 servitude of passage to the plaintiffs' property.
The critical alienation or partition of the Crane tract occurred upon the death of Bob Crane in 1973. By his will two separate estates were created which were owned in indivision by separate and distinct groups of co-owners, although some owners owned interests in both tracts. Marceaux v. Broussard, 338 So.2d 308 (La. App. 3d Cir.1976), writ denied 340 So.2d 992 (La.1977), held that a donation mortis causa which results in an enclosure is considered a partition within the meaning of former LSA-C.C. Art. 701, now LSA-C.C. Art. 694.
Upon Bob Crane's death and under his will Calvin Crane and Lucille Crane Johnson became owners in indivision with the widow of Bob Crane of the Crane property consisting of approximately 5 acres fronting on Hwy. 9. (The surviving spouse, Gracie Hemphill Crane, later donated her one-half interest to them.) Bob Crane's ten children became co-owners with their mother of the property which later was acquired by plaintiffs. At this point the two estates belonged to different groups of co-owners. Therefore, one estate was capable of being burdened with a predial servitude for the benefit of the other. LSA-C.C. Art. 646. This article states: "A predial servitude is a charge on a servient estate for the benefit of a dominant estate. The two estates must belong to different owners." Similarly, when the dominant and servient estates are acquired in their entirety by the same person, the predial servitude is extinguished. LSA-C.C. Art. 765. Art. 765 reproduces the substance of Article 805 of the Louisiana Civil Code of 1870 and LSA-C.C. Art. 646 derives its second paragraph from Article 805. According to comment (b) of LSA-C.C. Art. 765, Article 805 indicated that if the owner of one estate acquires only a part of the other estate or in indivision with another person, confusion does not take place. Thus, the co-owner of an estate owned in indivision may have a right of servitude on an estate of which he is also a co-owner. This follows as an application of the maxim nemini res sua servit (no one has a right of servitude in his own property). See Comment (f) LSA-C.C. Art. 646.
Stated otherwise, the back property now owned by plaintiffs became enclosed by virtue of the testamentary disposition and partition of the original Crane tract upon Bob Crane's death. At all pertinent times there has existed a road crossing the Crane property affording passage from the plaintiffs' property to the public road. As successors to the original owner, the owners of the property over which passage was previously exercised are obligated to furnish *1067 gratuitous passage to the enclosed estate. Fuller v. Wright, 464 So.2d 350 (La.App. 2d Cir.1985), writ denied 465 So.2d 737 (La.1985); Patin v. Richard, supra. Accordingly, the owners of the enclosed property are entitled to an Article 694 gratuitous servitude over the land on which the passage was previously exercised, that is, the Crane property. However, as previously stated, plaintiffs are not entitled to a servitude of passage over the Rogers lot. The sale of the Rogers lot did not create the enclosure; therefore, the Rogers property owes no servitude of passage under Article 694.

III.
Defendants argue that if there was an enclosure it was accomplished by a voluntary act or omission as contemplated by LSA-C.C. Art. 693 and the enclosed estate is not entitled to a servitude of passage. LSA-C.C. Art. 693 states: "If an estate becomes enclosed as a result of a voluntary act or omission of its owner, the neighbors are not bound to furnish a passage to him or his successors." This article applies when the owner of an estate encloses himself or his successors by a voluntary act or omission and attempts to demand passage under Article 689 across the land of a neighbor who is not his vendor or vendor's successor in title. Article 693 does not apply in this case to prevent a demand for an Article 694 servitude. The enclosure in this case was created by partition under Bob Crane's will, the exact circumstance contemplated by Art. 694.

IV.
Defendants argue that if there was a servitude of passage such right has prescribed because of nonuse for ten years. LSA-C.C. Art. 753[2]. Defendants argue that prescription began to run at the time the property became enclosed. However, LSA-C.C. Art. 754[3] is clear that prescription of nonuse begins to run for affirmative servitudes, such as a servitude of passage,[4] from the date of its last use. From the record it appears the date of last use would have been between the time the plaintiffs built the new boundary fence and the date the defendants placed the obstruction in front of the gate, sometime in 1985.
It should be noted that LSA-C.C. Art. 755[5] provides that the prescription of nonuse is suspended for a period of up to ten years if the owner of the dominant estate is prevented from using the servitude by an obstacle that he can neither prevent nor remove. Arguably, prescription has not yet begun to run.
In any event, ten years has not elapsed since the date of the last use of the road. Defendants argue that no one other than the defendants themselves and their immediate family have used this access since 1966. There is no requirement that the use be by plaintiffs alone to prove the servitude of passage has been used. Plaintiffs have the burden under LSA-C.C. Art. 764 of proving that they or some other person has made use of the servitude during the period *1068 of time required for the accrual of prescription. The admission by defendants that they and their family used the passage up until the property was transferred from the heirs of Bob Crane to other individuals (presumably Etheridge and Steele in 1983) supports the plaintiffs' position that this servitude of passage has not prescribed. The testimony of Emery Atkins indicating he and his workers used that access for several months after he acquired the property, combined with the actions of the defendants in placing the obstruction in front of plaintiffs' gate, indicates the servitude of passage has been used as recently as 1985. The trial court properly overruled defendants' exception of prescription.

V.
Defendants argue the trial court erred in not granting their motion for a new trial based upon the new evidence presented at the hearing on the motion. A review of the record reveals the only evidence presented at the hearing was the testimony of Ulysses Rogers who was a primary witness at trial. The testimony elicited from Mr. Rogers failed to establish any new evidence upon which a motion for a new trial could be justified.
The trial court has great discretion in ordering or denying a motion for new trial. Miller v. Chicago Insurance Company, 320 So.2d 134 (La.1975). The trial court did not abuse its discretion in denying the motion for a new trial because there was no new evidence presented.

VI.
Defendants argue that the judgment rendered by the trial court describing the location of the servitude as, "... the blacktop and dirt road crossing defendants' properties which runs from Highway 9 to the gate on plaintiffs' property," is vague, ambiguous, and susceptible of misinterpretation.
We agree that the defendants are entitled to a more exact description of the servitude of passage burdening their estate. As we determined above, the Rogers lot should not be burdened by this servitude of passage. This will require relocation of the passage at the point where it crossed the Rogers lot so as to provide access to the public road. We will remand the case for a more precise description of the location of the servitude.
We also note that the servitude of passage between the house and garage and extending the length of the Crane property imposes a substantial burden on this property. Accordingly, this servitude may be relocated in accordance with LSA-C.C. Art. 695[6] and 748[7]. If sought by defendants, the matter of relocation can be dealt with on remand.

VII.
To the extent that the judgment granted a servitude of passage across the Rogers lot the judgment is reversed. In all other respects the judgment is affirmed. We remand this case to the trial court, with directions that the location of the servitude of passage across the Crane property to Hwy. 9 be more precisely described by reference to a legal description and/or reference to a survey.
*1069 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

NOTES
[1] LSA-C.C. Art. 694:

"When in the case of partition, or a voluntary alienation of an estate or of a part thereof, property alienated or partitioned becomes enclosed, passage shall be furnished gratuitously by the owner of the land on which the passage was previously exercised, even if it is not the shortest route to the public road, and even if the act of alienation or partition does not mention a servitude of passage."
[2] LSA-C.C. Art. 753:

"A predial servitude is extinguished by nonuse for ten years."
[3] LSA-C.C. Art. 754:

"Prescription of nonuse begins to run for affirmative servitudes from the date of their last use, and for negative servitudes from the date of the occurrence of an event contrary to the servitude.
An event contrary to the servitude is such as the destruction of works necessary for its exercise or the construction of works that prevent its exercise."
[4] LSA-C.C. Art. 706:

"Predial servitudes are either affirmative or negative.
Affirmative servitudes are those that give the right to the owner of the dominant estate to do a certain thing on the servient estate. Such are the servitudes of right of way, drain, and support.
Negative servitudes are those that impose on the owner of the servient estate the duty to abstain from doing something on his estate. Such are the servitudes of prohibition of building and of the use of an estate as a commercial or industrial establishment."
[5] LSA-C.C. Art. 755:

"If the owner of the dominant estate is prevented from using the servitude by an obstacle that he can neither prevent nor remove, the prescription of nonuse is suspended on that account for a period of up to ten years."
[6] LSA-C.C. Art. 695:

"The owner of the enclosed estate has no right to the relocation of this servitude after it is fixed. The owner of the servient estate has the right to demand relocation of the servitude to a more convenient place at his own expense, provided that it affords the same facility to the owner of the enclosed estate."
[7] LSA-C.C. Art. 748:

"The owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude.
If the original location has become more burdensome for the owner of the servient estate, or if it prevents him from making useful improvements on his estate, he may provide another equally convenient location for the exercise of the servitude which the owner of the dominant estate is bound to accept. All expenses of relocation are borne by the owner of the servient estate."