572 So.2d 185 (1990)
WILFAIR ASSOCIATES, a Partnership
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al.
No. CA 89 1484.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
John E. Coleman, Jr., Aycock, Horne & Coleman, Franklin, Gordon A. Pugh, Breazeal, Sachse & Wilson, Baton Rouge, for plaintiff/appellant.
James J. Davidson, III, Davidson, Meaux, Sonnier & McElligott, Lafayette, for Southern Pacific Transp. Co.
*186 Edward M. Leonard, Jr., Morgan City, for Virginia G. Bersen, Mary Etta G. Taylor and Emanuel J. Grizzaffi.
B.J. Rawls, Morgan City, for Hudson Drydocks, Inc.
Patrick T. Caffery, Caffery, Ourbre, Dugas & Campbell, New Iberia, for Texaco, Inc.
Before COVINGTON, C.J., LANIER, J., and LEMMON,[*] J. Pro Tem.
COVINGTON, Chief Judge.
On August 3, 1987, Southern Pacific Transportation Company (Southern Pacific) demolished a railroad crossing which had provided access for 50 years from East Railroad Avenue to a tract of property presently owned by Wilfair Associates (Wilfair) in Morgan City, St. Mary Parish, Louisiana. Wilfair filed a Petition for Recognition of Servitude and Damages against Southern Pacific. Wilfair later included the owners of the property to the east, the Grizzaffi tract, and the property to the west, the Texas Company (Texaco) tract, as additional defendants due to allegations by Southern Pacific that one or the other of these estates owed a right of passage to the Wilfair estate.
The trial court granted a Motion for Partial Summary Judgment recognizing the right of passage of Wilfair across the railroad of Southern Pacific which was to replace the crossing it had destroyed on August 3, 1987. The trial court dismissed the claims against the owners of the contiguous properties. Southern Pacific appeals this judgment. Wilfair appeals the dismissal of its alternative claims for a servitude of passage by the Texaco or Grizzaffi estates.
The following issues are presented for consideration by this court:
1. Is the Wilfair tract entitled to a legal servitude of passage over the Southern Pacific railroad?
2. Does the temporary passage to a public road allowed by the Grizzaffi property subsequent to the removal of the crossing by Southern Pacific prohibit classifying the Wilfair property as an enclosed estate?
At one time the property of Wilfair, and that of all defendants, Southern Pacific, Texaco and all of the Grizzaffis, comprised one large tract. Over the years, parcels of the parent tract were sold off so that Wilfair's property is surrounded on the west by property of Texaco, on the north by the railroad right of way of Southern Pacific, on the east by property owned by Grizzaffis, and on the south by Bayou Boeuf, as shown below:
[See page 187 for map of property.]
*187 
It is essential to review the title of the Wilfair property along with the changes in the law concerning the right of a servitude of passage.
By an Act of Sale dated September 2, 1895, Borue and Percy O'Brien acquired two large tracts of land in Morgan City. One tract, located north of the railroad, included all the area which is now a subdivision. The second tract, of which the Wilfair property forms a part, extended from the railroad on the north to the bayou at the south.
In 1895, Article 699 of the Civil Code provided that an estate was enclosed if it had no access to a public road. The Borue and Percy O'Brien tract had access to East Railroad Avenue on the northwest corner and Aycock Street on the northeast corner and, consequently, was not an "enclosed estate" in 1895. The codal provision read in full:
The owner whose estate is enclosed, and who has no way to a public road, may claim the right of passage on the estate of his neighbors for the cultivation of his estate, but he is bound to indemnify them in proportion to the damage he may occasion. [Emphasis added].
By Act of Partition, dated February 11, 1911, Borue and Percy O'Brien partitioned the tract of land which extended along the bayou, and Borue O'Brien received the tract between the railroad on the north and the bayou on the south.
The law was the same in 1911 as Civil Code Art. 699 provided that an estate was enclosed only if it had no access to a public road. The tract had access to public roads on the northwest and northeast corners and, consequently, was not enclosed.
By Act of Sale dated May 6, 1911, Borue O'Brien sold Tract "1" to Waddell-Williams Lumber Company (Waddell-Williams). O'Brien retained ownership of the westernmost 35 feet of his lands and granted a servitude of passage across it to Waddell-Williams. O'Brien was granted a servitude of passage across the northernmost 35 feet Tract "1". Additionally, O'Brien had access to Aycock Street on the northeast corner of his property. Neither tract was enclosed in 1911.
That same day O'Brien granted Waddell-Williams a railroad spur track servitude. *188 The spur left the railroad's main line at a point 560 feet easterly of the east Waddell-Williams boundary, and entered Tract "1" at a point 167 feet south of the northern boundary. O'Brien reserved the right to use the track.
By an Act of Sale dated July 31, 1914, O'Brien sold to the Louisiana Syrup and Canning Company (Louisiana Syrup) the waterfront tract labeled "3-A" above. In the sale, O'Brien granted to Louisiana Syrup a servitude to construct a rail spur through the property. Additionally, Louisiana Syrup was granted a road servitude to connect its tract with East Railroad Avenue. No estates were legally enclosed in 1914.
By Act of Sale dated November 18, 1915, O'Brien sold a further parcel of his land having a width of 1,000 feet to Waddell-Williams, and now identified as Tracts "2-A" and "2-B". Tract "2-B" is now part of the property presently owned by Wilfair. In this sale, Waddell-Williams granted O'Brien the right to use the existing spur trackage and to construct an additional spur.
The law in 1915 had not changed, with Article 699 still providing that an estate was enclosed only if it did not have access to a public road. As of this time, Waddell-Williams owned tracts "1", "2-A", and "2-B" ("2-B" is now part of Wilfair's property) and had access to a public road at East Railroad Avenue on the northwest corner; the remaining O'Brien property had access to Aycock Street on the northeast corner. The Louisiana Syrup property shown above had a servitude to Aycock Street across the O'Brien property. No estates were legally enclosed in 1915.
Two days later, on November 20, 1915, Waddell-Williams sold Tract "2-B" (now a part of Wilfair's property) to the Texas Company. In this sale, Texas Company was given the right to use the spur trackage to connect with the railroad's main line. The sale recognized O'Brien's previously reserved right to use all spur trackage which crossed this land.
Tract "2-B" is the first and only portion of the original O'Brien tract that appears not to have access to a public road and would be entitled to a servitude of passage if it so desired. Tracts "1-A" and "2-A" owned by Waddell-Williams still had access to East Railroad Avenue on the northwest; the remaining O'Brien tract had access to Aycock Street across the O'Brien tract.
In 1916, the Legislature changed the law with respect to the servitude of passage with Act 197 of 1916, which amended Article 699 to expand the methods of access that, if available, would preclude an estate from having a right of passage across the property of its neighbors. The revised Article provided in full:
The owner whose estate is enclosed, and who has no way to a public road, a railroad, a tramroad or a water course may claim the right of passage on the estate of his neighbor or neighbors to the nearest public road, railroad, tramroad or water course and shall have the right to construct a road, railroad or tramroad according to circumstances and as the exigencies of the case may acquire (require), over the land of his neighbor or neighbors for the purpose of getting the products of his said enclosed land to such public road, railroad, tramroad or water course, or for the cultivation of his estate, but he shall be bound to indemnify his neighbor or neighbors in proportion to the damage he may occasion. [Emphasis added].
The effect of this change was to "unenclose" as a matter of law, Tract "2-B" (now a part of Wilfair's property) since it bordered on a navigable watercourse, Bayou Boeuf, and had access to the railroad spurs and tracks. Now, all parcels were again not enclosed due to access to public roads, watercourses, and railroad tracks.
By Act of Sale dated July 12, 1919, Cotton Brothers Shingle Co., Inc. (Cotton Brothers) purchased Tract "3-B". By this sale, O'Brien appears to have lost his access to a public road, but still had access to the railroad and watercourse. On that same day, by agreement dated July 12, 1919, O'Brien, Cotton Brothers and Louisiana Syrup agreed that each of the three could use the whole of the spur trackage *189 which had been laid on their respective tracts of land. All tracts of land were unenclosed. Tracts "1" and "2-A" had access to East Railroad Avenue on the northwest, the railroad tracks on their northeast, and the watercourse on the south. Tract "2-B" (now a part of Wilfair's property) had access to the railroad on its north as well as Bayou Boeuf on its south. O'Brien's remaining Tract "4" had access to the railroad and the bayou, while Tracts "3-A" and "3-B" had access to water, rail, and a public road. No tracts were enclosed in 1919.
By Act of Sale dated September 18, 1920, O'Brien sold Tract "4" (now also part of Wilfair's property) to the Texas Company. O'Brien now only owned the 35 foot strip along the western boundary of Waddell-Williams' Tract "1". None of the properties were legally enclosed in 1920 because all properties had access to a public road, a railroad, a tramroad, or a watercourse, all as provided by Article 699.
Less than two years later, on February 18, 1922, O'Brien and Waddell-Williams reach an agreement regarding their respective properties. The servitude over the 35-foot road on the western boundary of the property owned by O'Brien was cancelled. As part of the agreement, O'Brien reserved the southernmost 100 feet of his 35-foot strip for his personal use and leased the balance of the road to Waddell-Williams. The 35-foot servitude across the northern boundary of Tract "1" was also cancelled. O'Brien was also given a servitude of passage for vehicular traffic as well as a servitude for rail traffic across Tracts "1" and "2-A". The law was the same in 1922, with Article 699 providing that an estate was enclosed if it had no access to a public road, railroad, tramroad or watercourse. None of the properties were legally enclosed in 1922.
By Act of Sale dated July 17, 1928, O'Brien sold the 35-foot strip on the west to Norman-Breaux Lumber Company (Norman Breaux), who had previously purchased Tracts "1" and "2-A" from Waddell-Williams.
The law remained unchanged, with all tracts having access under Article 699 to public roads, railroads, tramroads, or watercourses. None of the property, particularly Tracts "2-B" and "4" (now Wilfair's property) was enclosed in 1928.
By Act of Sale dated May 27, 1935, the Texas Company sold Tracts "2-B" and "4" to W. Prescott Foster, Wilfair's ancestor in title. The law had not changed, so Tracts "2-B" and "4" (hereafter the "Wilfair Property") were not enclosed due to their access to railroads, tramroads, and a watercourse, as provided for in Article 699 of the Civil Code. WHEN MR. FOSTER ACQUIRED THE WILFAIR PROPERTY, IT WAS NOT AN ENCLOSED ESTATE.
By contract dated February 20, 1936, W. Prescott Foster entered into a conventional servitude to cross the railroad tracks for access to East Railroad Avenue with the Texas and New Orleans Railroad Company (now Southern Pacific).[1] The Wilfair Property, indicated as Tracts "2-B" and "4", now had a conventional servitude of passage to the nearest public road as well as access to rail and water.
This event is significant because not only was the Wilfair Property not enclosed as a matter of law due to the provisions of Article 699 of the Civil Code, it was also not enclosed since it had a conventional servitude of passage. As we will see further, it remained unenclosed due to this conventional servitude with Southern Pacific until Southern Pacific destroyed the crossing, leaving the property enclosed for the first time.
On October 21, 1944, the Grizzaffi interests began their acquisition of Tracts "3-A" and "3-B". By Act of Sale dated November 18, 1948, Great Lakes Dredge and Dock Company acquired Tract "5".
All tracts of land had access to public roads, railroads, and watercourses provided for in Article 699, and the Wilfair Property *190 had access to East Railroad Avenue by way of the conventional servitude with Southern Pacific. In 1966, in an Act of Sale, the Norman-Breaux estate sold Tracts "1" and "2-A" to Texaco, Inc.
Four years later, the Legislature began to limit the definition of an enclosed estate. By Act 672 of 1970, reference to "watercourses" was deleted. Article 699 as amended then read:
The owner whose estate is enclosed, and who has no way to a public road, railroad, or a tramroad may claim the right of passage on the estate of his neighbor or neighbors to the nearest public road, railroad, or a tramroad and shall have the right to construct a road, railroad, or tramroad according to circumstances and as the exigencies of the case may require, over the land of his neighbor or neighbors for the purpose of getting the products of his said enclosed land to such public road or railroad, tramroad or for the cultivation of his estate, but he shall be bound to indemnify his neighbor or neighbors in proportion to the damage he may occasion. [Emphasis added].
This had no adverse effect on the Wilfair Property since it enjoyed a conventional servitude with Southern Pacific as well as rail access.
The law was again changed by the Legislature by Act 514 of 1977 dropping "railroads" and "tramroads" to provide that an estate is enclosed only if its owner does not have access to the nearest public road. The Article of the Civil Code was renumbered to 689 and remains the law today, as follows:
Art. 689. Enclosed estate; right of passage
The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion. [Emphasis added].
This is a significant change in the law. If Wilfair did not have access to East Railroad Avenue with the crossing under the conventional servitude with Southern Pacific, it would have the right, beginning with the change in the law in 1977, to claim a right of passage to the nearest public road under Article 689. The nearest public road was across Southern Pacific's property to East Railroad Avenue. But, as long as Wilfair had the conventional servitude, it was not legally "enclosed" and not entitled to demand passage from anyone.
On August 3, 1987, Southern Pacific removed the crossing and terminated the servitude. At this time the Wilfair Property became an enclosed estate, enclosed by Texaco on the west, Southern Pacific on the north, Grizzaffi on the east and Bayou Boeuf on the south.
In order to have access to a public road, Wilfair made arrangements for temporary passage over the Grizaffi property. An affidavit by Grizzaffi clearly states that this right can be revoked at any time, even before any resolution of the dispute between Wilfair and Southern Pacific.

I. ACCESS TO A PUBLIC ROAD
Southern Pacific contends that the Wilfair Property had access to a public road by way of private dirt and shell roads across the Grizzaffi property. The physical existence of these roads has no bearing on whether Wilfair had any legal right to actually use these roads. The affidavits of James J. Bailey, III, Abbie Grizzaffi and Dennis Taylor state that no legal right existed prior to the destruction of the railroad crossing. The fact that a neighbor might voluntarily allow temporary ingress and egress does not prohibit an enclosed estate from asking the court to establish a servitude of passage pursuant to Civil Code Articles 689, et seq. We agree with the reasoning of the Second Circuit Court of Appeal in Atkins v. Johnson, 535 So.2d 1063 (La.App. 2 Cir.1988) in stating:
An estate which is entitled to demand a gratuitous servitude under Article 694 does not lose that right when the owners of the enclosed estate secure an informal access across other property after being denied passage across the servient estate. To hold otherwise would be to encourage the owners of servient estates to *191 engage in self-help tactics to reduce lawful burdens upon their estates.
Atkins at p. 1066.
It is irrelevant whether the claim is made under Article 689 for a compensable servitude or under 694 for a gratuitous servitude. To refuse to allow an estate to seek a temporary servitude of passage when denied a servitude by another estate would discourage mitigation of damages which may occur when the property becomes enclosed.
Accordingly, the partial summary judgment of the trial court recognizing Wilfair's right of passage across the railroad right of way of Southern Pacific and ordering Southern Pacific to restore the crossing it removed in August, 1987, is affirmed.
Costs of this appeal are to be paid by Southern Pacific.
AFFIRMED.
NOTES
[*] Judge Mary Ann Vial Lemmon of the 29th J.D.C. is serving as judge pro tempore by special appointment of the Louisiana Supreme Court to fill the vacancy created by the illness and subsequent death of Judge Steve A. Alford, Jr.
[1] The agreement states it expires one year from its creation, but since neither party has contested its validity, we will assume it is valid.