# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CW 05-467
### consolidated with 05-910


**IRONWOOD RESOURCES, LTD., ET AL.**

**VERSUS**

**BABY OIL, INC., ET AL.**


************

SUPERVISORY WRITS AND APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. 2005-0160,
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Marc T. Amy, Michael G. Sullivan, and Billy Howard Ezell,
Judges.


**WRIT DENIED; JUDGMENT AFFIRMED.**

**Patrick S. Ottinger**
**Herman E. Garner, Jr.**
**Ottinger, Hebert, L.L.C.**
**Post Office Drawer 52606**
**Lafayette, Louisiana  70505-2606**
**(337) 232-2606**
**Counsel for Plaintiffs/Applicants/Appellants:**
> **Gary B. Strong, M.D.**
> **Estate of Paul F. O'Brien, Jr.**
> **Ernest Obering O'Brien**
> **T. E. Dawkins**
> **Alden Obering O'Brien**
> **Petroco, L.L.C.**
> **Grace Woolley Gowan**
> **Paul Francis O'Brien, III**
> **Starfish Energy, L.L.C.**
> **Priscilla Alden O'Brien Haass**
> **Triax, Ltd.**
> **Franks Petroleum, Inc.**
> **Obieco, L.L.C.**
> **Estate of John P. Strong**
> **Ironwood Resources, Ltd.**

**Raymond A. Beyt**
**Beyt & Beyt**
**Post Office Box 52157**
**Lafayette, Louisiana  70505**
**(337) 233-6771**
**Counsel for Defendants/Respondents/Appellees:**
> **Suard Barge Service, Inc.**
> **Baby Oil, Inc.**

**Joseph L. Waitz, Jr.**
**Waitz & Downer**
**Post Office Box 7015**
**Houma, Louisiana  70361-7015**
**(985) 876-0807**
**Counsel for Defendants/Respondents/Appellees:**
> **Baby Oil, Inc.**
> **Suard Barge Service, Inc.**

SULLIVAN, Judge.

Plaintiffs seek review of a judgment, which granted Defendants' declinatory exception of improper venue.[1] We deny the writ and affirm the trial court's judgment.

### *Facts*

Plaintiffs are the owners of undivided working interests in and to certain oil, gas, and mineral leases, which cover and affect lands in the Deer Island Field of Terrebonne Parish, Louisiana. The leases are governed by a Model Form Operating Agreement. American Explorer, Inc. was the original operator under the Operating Agreement. American Explorer, Inc. changed its name to PetroQuest Corporation and sometime thereafter conveyed its interests in and to the leases to Suard Barge Service, Inc. (Suard).

Plaintiffs filed suit in Lafayette Parish, alleging violations of and/or seeking enforcement of various provisions of the Operating Agreement, as well as damages and attorney fees. Plaintiffs seek:

1) A judicial declaration that Defendants were not properly selected as the operator under the Operating Agreement;

2) Alternatively, removal of Defendants as operator under the Operating Agreement; and

3) Damages for Defendants' breach of the Operating Agreement and reimbursement and restitution of all funds improperly withheld from them.

Plaintiffs assert the Operating Agreement was executed in Lafayette Parish, the last duly designated operator is domiciled in Lafayette Parish, and the assignment whereby Defendants acquired their interests in the subject oil, gas, and mineral leases was executed in Lafayette Parish.

_____

[1]Plaintiffs filed an appeal and a writ application, seeking review of the judgment. The writ was granted for the limited purpose of consolidating the writ application with the appeal.

Defendants filed an exception of improper venue, asserting that, pursuant to La.Code Civ.P. art. 80(A)(1), this matter should proceed in Terrebonne Parish, not Lafayette Parish. Plaintiffs contend Lafayette Parish is proper venue pursuant to La.Code Civ.P. art. 76.1.

### *Discussion*

Article 80(A)(1) of the Code of Civil Procedure provides:

> A. The following actions may be brought in the parish where the immovable property is situated or in the parish where the defendant in the action is domiciled:
>
> (1) An action to assert an interest in immovable property, or a right in, to, or against immovable property, except as otherwise provided in Article 72[.]

Article 76.1 provides:

> An action on a contract may be brought in the parish where the contract was executed or the parish where any work or service was performed or was to be performed under the terms of the contract.

Article 80 governs if it conflicts with Article 76. La.Code Civ.P. art. 45.

Plaintiffs urge that they "do not assert any right or interest in any immovable property in their Petition" but simply seek to enforce the terms of a contract. Therefore, their suit is personal in nature, and Article 80 does not apply. Defendants contend that, because Plaintiffs' claims arise out of the Operating Agreement, a contract affecting oil, gas, and mineral leases, their claims are immovable in nature and Article 80 governs venue.

Pursuant to the Mineral Code, oil, gas, and mineral leases are mineral rights. La.R.S. 31:16. Mineral rights are incorporeal immovables; they are situated "in the parish in which the land burdened is located." La.R.S. 31:18.

2

By definition, Plaintiffs, as working interest owners, own "a working interest in [an] oil or gas well or unit." La.R.S. 31:212.31. The Operating Agreement they contend has been violated and seek to enforce is "a contract for the exploration, development, or operation of mineral rights." La.R.S. 31:215.

Plaintiffs allege Defendants failed and/or refused to perform their duties under the Operating Agreement in the following respects:

(a)    Refusal to allow an audit of the books and records pertaining [to] operations and activities on the Contract Area, as required by the Operating Agreement;

(b)    "Netting" expenses attributable to Petitioners, against revenue due and owing Petitioners, when such is not authorized by the Operating Agreement;

(c)    Charging the Non-Operators costs and expenses which are unauthorized and not valid and which, if authorized or valid, are in excess of customary costs and charges which might be charged in the premises;

(d)    Failing to communicate with the Non-Operators and to provide them with information as to activities connected on the Contract Area;

(e)    Refusing to authorize the direct payment of revenues to Petitioners;

(f)    The actions and inactions of Baby Oil and/or Suard, in its purported or assumed capacity as operator of the Contract Area, constitute gross negligence or willful misconduct.

In their Petition, Plaintiffs define the Contract Area as the oil, gas, and mineral leases in which they own undivided working interests. Any income, costs, expenses, and/or revenues referenced by Plaintiffs in these allegations necessarily refer to income, costs, expenses, and revenue generated and/or incurred as a result of the exploration, development, or operation of the mineral leases under the terms of the Operating Agreement. Considered in this light, it is clear that Plaintiffs are asserting

3

their rights in incorporeal immovable property and seek to protect their interests in this incorporeal immovable property by enforcing the terms of the Operating Agreement. Therefore, venue is governed by Article 80.

Our conclusion is based in part on the court's analysis of the plaintiff's claims in *CLK Co., L.L.C. v. CXY Energy, Inc.*, 98-802 (La.App. 4 Cir. 9/16/98), 719 So.2d 1098, *writ denied*, 98-3146 (La. 2/12/99), 738 So.2d 574. In *CLK*, the plaintiff filed suit to enforce the terms of a Confidentiality Agreement, which provided for the conveyance of a royalty interest to it in return for services rendered to the defendant. The plaintiff filed suit in Orleans Parish. Pertinent operating agreements had been recorded in Vermilion Parish, and the plaintiff filed a notice of *lis pendens* in that parish. CXY excepted to venue, arguing venue was proper in Vermilion Parish, where the immovable property subject to the royalty interest was located, or Lafayette Parish, where its principal business establishment was located, not Orleans Parish. The plaintiff opposed the exception, arguing, as Plaintiffs do here, that its claim was based on a contract and, therefore, La.Code Civ.P. art. 80 did not apply. The court concluded that the plaintiff sought the conveyance of the overriding royalty interest, an incorporeal immovable, and Article 80 was applicable.

In reaching this conclusion, the court discussed at length Louisiana's treatment of personal and real rights and actions and movable and immovable rights and actions, observing: "The 'nature' of a personal right is an obligation, whereas the 'nature' of a real right is one of ownership and its dismemberments. This is to be distinguished from the 'object' of those rights which may be either movables or immovables depending on to what the right pertains." *Id.* at 1104.

4

The court then observed that Article 80 applies to "all immovable actions" and is concerned with the object of the action, movable or immovable, not the nature of the action, personal or real. With this in mind, the court considered La.Code Civ.P. art. 422's definition of personal and real actions. Article 422 provides:

> A personal action is one brought to enforce an obligation against the obligor, personally or independently of the property which he may own, claim, or possess.
>
> A real action is one brought to enforce rights in, to, or upon immovable property.
>
> A mixed action is one brought to enforce both rights in, to, or upon immovable property, and a related obligation against the owner, claimant, or possessor thereof.

The court observed that Article 422 makes no distinction between the terms "real" and "immovable." Continuing, the court quoted Professor Yiannopoulos' observation that "actions for the enforcement of the right of ownership, dismemberments of ownership [e.g., usufruct, etc.] and real security are real actions—movable or immovable." *CLK*, 719 So.2d at 1105, *quoting* YIANNOPOULOS, 2 LOUISIANA CIVIL LAW TREATISE: PROPERTY, § 201 at 476 (3d ed. 1991). Restating its earlier observation regarding La.Code Civ.P. article 80's treatment, the court noted that for "venue purposes all rights with an immovable object are to be treated as immovable real rights," and mixed actions are treated like immovable actions. *Id.* at 1106. Accordingly, the court concluded that the object of the action, not the nature of the action, determines venue.

Applying this analysis to Plaintiffs' claims, we find that, even if their claims are personal in nature, the object of them, their interests in oil, gas, and mineral leases, is incorporeal immovables, and Article 80 governs venue.

Plaintiffs urge that Defendants' reliance on *CLK* is misplaced because they do not seek title to immovable property. Our decision is not based on the similarity of Plaintiffs' position to that of the plaintiff in *CLK* but on the court's discussion of Louisiana law and its treatment of personal, real, and immovable rights and actions for venue purposes.

Plaintiffs point to the decisions in *Petro Point 5000 v. deGraauw*, 520 So.2d 1025 (La.App. 3 Cir. 1987), *Grezaffi v. Smith*, 572 So.2d 183 (La.App. 1 Cir. 1990), and *Rock Energy, Inc. v. Equity Oil Co.*, 01-1005 (La.App. 1 Cir. 5/10/02), 818 So.2d 920, as support for their position. In *Petro Point* and *Grezaffi*, the courts determined that Article 80 did not apply to an optionor/vendor's action for specific performance against an optionee/purchaser who was not domiciled in the parish where the immovable property, which was the subject of a purchase agreement, was situated, because the primary purpose of the suit was recovery of the purchase price not the transfer of the title to the immovable property.

In *Rock*, the plaintiff assigned an option to acquire oil, gas, and mineral leases situated in Pointe Coupee Parish to defendant. Payment for the assignment was other valuable consideration and one-half of any proceeds the defendant received for seismic options that it might negotiate. After learning that the defendant had assigned the option for $1.2 million, the plaintiff filed suit in Pointe Coupee Parish, seeking one-half of the proceeds the defendant received for the seismic options it assigned. The court determined that the object of the plaintiff's claim was one-half of the proceeds received by the defendant for the assignment of the options, not the seismic operations[2].

---

[2]For the purposes of its discussion, the court assumed the seismic operations were incorporeal immovables.

6

The plaintiffs in these cases were not similarly situated to Plaintiffs here, and their claims were not the same. In *Petro Point* and *Grezaffi*, the plaintiffs sought to divest themselves of their interests in immovable property, and in *Rock*, the plaintiff had already divested the immovable property at issue, whereas Plaintiffs *sub judice* seek to protect their interests in immovable property by enforcing a contract under which Defendants operate and manage their interests in that immovable property.

### *Disposition*

Plaintiffs' writ application is denied, and the trial court's judgment, granting Defendants' declinatory exception of improper venue and transferring this matter to Terrebonne Parish is affirmed. All costs are assessed to Plaintiffs.

**WRIT DENIED; JUDGMENT AFFIRMED.**