hCANNELLA, Judge.
In a franehise/lease action brought by plaintiff, G.C. & K.B. Investments, Inc., defendant, Elden Otillio, Jr., appeals from a judgment denying his Declinatory Exception of Improper Venue. We reverse.
On June 17, 1987, plaintiff, defendant and his wife, Martha Otillio, executed a franchise agreement for the operation of an oil change business located in New Orleans, Louisiana. On March 14, 1988, defendant’s corporation, SpeeDee Solution, Inc., executed a sublease with plaintiff for the New Orleans property on which the business was located. That same day defendant signed a personal guarantee for the sublease obligations. On July 21, 1988, the parties transferred the franchise to SpeeDee Solution, Inc., a corporation owned by Mr. and Mrs. Elden Otillio, Jr. Both Otillios executed a continuing guarantee for the franchise agreement.
laAfter three years, defendant wanted to terminate the franchise. He found someone to take over the franchise, sought and ob- *976 tamed plaintiff’s permission to terminate the franchise agreement and to substitute Thomas Lynn Communications, Inc. (TLC) as the new franchisee. On February 28, 1991, the parties executed an Agreement for Mutual Release and Voluntary Termination and Cancellation of Local Franchise Agreement, which canceled defendant’s obligations under the franchise. Defendant also signed a Guarantee of the TLC sublease obligations, including payment of rent, in the event of default by TLC, who had executed the replacement franchise agreement and a sublease with plaintiff for the premises. The record is silent as to where this Guarantee, Sublease arid Franchise Agreement were executed.
Alleging TLC’s default, on June 15, 1993, plaintiff made demand on defendant to pay rent and property taxes for 1993 pursuant to the lease guarantee. Two more demand letters were sent to defendant in June and October of 1993. On February 16, 1994, when defendant failed to comply, plaintiff filed suit in the 24th Judicial District Court for the Parish of Jefferson to collect the rent and property taxes owed by TLC under the sublease. On January 20, 1995, defendant filed a Declinatory Exception of Improper Venue and a Peremptory Exception of Non-joinder of a Necessary Party. In opposition to the venue exception, plaintiff filed a copy of defendant’s Guarantee of the TLC sublease and an affidavit by Kevin M. Bennett, the Executive Vice-President of plaintiff corporation, asserting that the Guarantee signed-by defendant was executed in Jefferson Parish and that under La.C.C.P. art. 76.1, venue is proper where the contract was executed.
A hearing on the exceptions was held on June 22, 1995. On July 25, 1995, the trial judge denied the exceptions. On October 5, 1995, at defendant’s request, the trial judge filed reasons for judgment, stating that the contract of guarantee was executed in Jefferson Parish and suit was properly filed in ^Jefferson Parish under La.C.C.P. art. 76.1. She further found that plaintiff did not fail to join a necessary party.
On appeal[1], defendant first asserts that the trial judge erred in denying the Exception of Improper Venue.[2] Defendant contends that the trial judge should have considered all of the franchise and post-franchise documents to determine the intent of the parties. Second, defendant contends that the trial judge failed to apply the correct venue provision to determine the proper place to file the action.
Defendant contends that the correct venue is either St. Tammany Parish, his domicile, or Orleans Parish, the location of both the business and TLC. Defendant notes that the Mutual Release states that it and the TLC Guarantee were executed in consideration of the execution of a new sublease with TLC. Defendant asserts that the TLC Guarantee states that he is a primary obligor and that he and his heirs are bound by all the terms and conditions of the TLC sublease precisely as if defendant had executed the sublease. Furthermore, the document states that defendant binds himself as though he were a party to the contract between TLC and plaintiff. Thus, defendant asserts that the sublease between TLC and plaintiff must be considered to determine the intent of the parties.[3] Defendant also refers to the Mutual Release document, which states:
5.10 Venue. All suits instituted by any party relating to this Agreement shall be instituted in the United States District Court for the Southern District of Louisiana, or the Civil District Court for the Parish of New Orleans, Louisiana.
Defendant concludes that a review of all of the documents indicates an |4intent to settle disputes in Orleans Parish. He also argues *977 that the Guarantee is simply an accessory obligation and dependent upon the sublease . executed by TLC. Because it is an accessory obligation, defendant argues that the trial court cannot simply look at the TLC Guarantee to determine where venue is proper, but must also consider the principal agreement. Furthermore, defendant argues that the TLC Guarantee made defendant a party to the lease just as if he had signed the TLC lease and, in fact, the action here is on the sublease. This factor triggers the application of C.C.P. art. 80.
Plaintiff responds that there is no authority for considering the various documents to determine venue. In addition, it contends that defendant is aware that all of the agreements were executed in Jefferson Parish. Plaintiff further contends that the agreements between TLC and plaintiff and the Guarantee for TLC’s lease obligations signed by defendant are mutually exclusive, since they have different signatures and the sublease with TLC was created after the Mutual Release between plaintiff and defendant. Plaintiff concludes that the original franchise documents are extinguished and cannot be used to show the intent for venue on an agreement executed after their demise.
La.C.C.P. art. 76.1 states in part:
An action on a contract may be brought in the parish where the contract was executed ...
We have reviewed the evidence in this case. Contrary to assertions made by plaintiff in brief and in the trial court, no evidence was presented to show the location (parish) that the defendant’s Guarantee of TLC, the TLC Franchise Agreement and Sublease were executed. Plaintiff refers to the affidavit submitted in opposition to the venue exception. The affidavit states as follows:
BEFORE ME, the undersigned authority, personally came and appeared
KEVIN M. BENNETT
who, being duly sworn, did depose and state that:
|51 —He is the Executive Vice President of G.C. & K.B. Investments, Inc. (“GC/KB”);
2 —GC/KB is a franchisor of the Spee-Dee Oil Change & Tune-Up concept;
3 —GC/KB is the tenant and sublessor of certain improved real property located at 4222 S. Claiborne Ave., New Orleans, Louisiana;
4 —GC/KB and Elden Otillio (“Otillio”) were parties to a Local Franchise Agreement governing Otillio’s franchise operation at the location;
5 —GC/KB and SpeeDee Solutions, Inc., company owned by Otillio, were parties to a sublease for the location;
6 —Otillio personally executed a Guarantee of SpeeDee Solutions, Inc.’s franchise and sublease obligations; and
7 —The Local Franchise Agreement, Sublease and Guarantee were all executed at SpeeDee’s former headquarters in Me-tairie, Louisiana.
As can be seen, the documents that the affiant states were signed in Metairie, Louisiana (Jefferson Parish) were the original franchise documents between plaintiff and defendant. Numbers 4, 5, and 6 specifically address defendant’s franchise agreement, SpeeDee Solutions, Inc., his company’s sublease and his personal guarantee of Spee-Dee Solutions, Inc.’s obligations relative to its sublease and franchise. The affidavit does not mention the later Guarantee signed by defendant, guaranteeing the obligations under the sublease between TLC and plaintiff. Furthermore, at the hearing on the exceptions, no evidence was introduced and no other evidence in the record indicates where the TLC Guarantee, or the other documents executed after the original franchise and sublease, were signed. Thus, since there is no evidence that the TLC Guarantee contract was executed in Jefferson Parish, we find that the trial judge erred in determining that Jefferson Parish is the place of proper venue under La.C.C.P. art. 76.1 because it was the place that the contract was executed. Since place of the contract provision of art. 76.1 does not apply to this case, the question is which other venue provision or article applies.
| ¡¡Defendant asserts that C.C.P. art. 80A.(3) applies because this is an action for breach of *978 a lease and to collect rent. Defendant notes that if there is a conflict between this article and the other venue articles, the Code provides that C.C.P. art. 80 applies.
Plaintiff argues that under C.C.P. 76.1, the action on a contract may also be brought in the parish where any work or service was performed, or was to be performed, under the terms of the contract. Plaintiff states that under the TLC sublease contract, rent on the sublease was to be paid to plaintiff at its office in Metairie, which is in Jefferson Parish. Plaintiff concludes that the Metairie office is where the work or services were to be performed, thus, the venue is Jefferson Parish under the second provision of C.C.P. art. 76.1. Plaintiff contends that art. 80 does not apply because this is not an action for breach of a lease on an immovable.
La.C.C.P. art. 43 provides:
The general rules of venue provided in Article 42 are subject to the exceptions provided in Articles 71 through 85 and otherwise provided by law.
The exceptions provided in Articles 71 through 85 are in derogation of a common right. Hawthorne Oil & Gas Corp. v. Continental Oil, 377 So.2d 285, 287 (La.1979); Sutton Steel & Supply, Inc. v. Southland Steel & Supply, Inc., 93-1666 (La.App. 3 Cir. 6/1/94); 640 So.2d 639, 640. Thus, they must be strictly construed and the party claiming the benefit of an exception must bring itself clearly within the exception. Hawthorne Oil & Gas Corp. v. Continental Oil, 377 So.2d at 287; Sutton Steel & Supply, Inc. v. Southland Steel & Supply, Inc., 640 So.2d at 640.
La.C.C.P. art. 45(1) states:
The following rules determine the proper venue in cases where two or more articles in this Chapter may conflict:
(1) Article ... 80 ... governs the venue exclusively, if this article conflicts with any of Articles 42 and 71 through 77; ... [Emphasis added]
RThe second venue provided by La.C.C.P. art. 76.1 states:
... or the parish where any work or service was performed or was to be performed under the terms of the contract.
La.C.C.P. art. 80 provides in pertinent part:
A. The following actions may be brought in the parish where the immovable property is situated or in the parish where the defendant in the action is domiciled:
(3) An action arising from the breach of a lease of immovable property, including the enforcing of a lessor’s privilege or seeking the payment of rent. The venue authorized by this Subparagraph shall be in addition to any other venue provided by law for such action. [Emphasis added]
Plaintiff contends that the second part of C.C.P. art. 76.1 applies because it states that venue is where any of the work or service was performed or was to be performed. In this regard, plaintiff asserts that the TLC sublease requires payment of the rent to be sent to its Metairie office. However, we find that the article, if it applies, is in conflict with C.C.P. art. 80, which is the exclusive venue when there is a conflict between it and C.C.P. art. 42 and C.C.P. arts. 71 through 77.
The suit herein is to collect rents and property taxes owed to plaintiff under the sublease between plaintiff and TLC. The Guarantee by defendant guarantees these payments, if TLC defaults, which it apparently did. But this is not just a Guarantee. The document places defendant in the position of TLC. Defendant is a “primary obli-gor” under the sublease. In addition, the sublease requires TLC to pay rent and property taxes, the failure of which is a breach of the terms of the sublease. Assuming that TLC defaulted on its rent and property taxes, that default was a breach of the sublease. Since defendant is a primary obligor on the sublease, the action to collect those rental payments and for reimbursement of the payment of the property taxes by plaintiff is an action arising from the breach of TLC’s sublease. In addition, C.C.P. art. 80A.(3) does | snot limit the action to collection of rents or the enforcement of a lessor’s privilege. Those are included among the actions that can arise from the breach of a lease. The demand for property taxes, payment of which was part of the obligations of the lease, is also a matter arising from the breach of a lease. Consequently, we find that the trial *979 judge erred in finding venue to be proper in Jefferson Parish. Under C.C.P. art. 80A(3), venue is exclusively where the immovable property is situated (Orleans Parish) or in the parish where the defendant in the action is domiciled (St. Tammany).
Accordingly, the judgment of the trial court is hereby reversed and the Declinatory Exception of Improper Venue is granted.
Costs of this appeal are to be paid by plaintiff.

REVERSED.

. Although the denial of the declinatory exception is not a final judgment, it is properly appealed under La.C.C.P. art. 2083 because it would cause irreparable injury to tty the case in the wrong venue. See: Chambers v. LeBlanc, 598 So.2d 337 (La. 1992).

. Defendant does not appeal the denial of the Exception of Nonjoinder Of A Necessary Party.

. Defendant attached various documents to his appellate brief, including the TLC sublease and termination of sublease agreement. However, these two documents were not filed in the record and cannot be considered by this court.