719 So.2d 1098 (1998)
CLK COMPANY, L.L.C.
v.
CXY ENERGY INC.
No. 98-C-0802.
Court of Appeal of Louisiana, Fourth Circuit.
September 16, 1998.
Rehearing Denied November 19, 1998.
*1099 M. Hampton Carver, John Anthony Dunlap, John Hobgood Fontham, Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux, L.L.C., New Orleans, for Relator.
John M. McCollam, Jason A.T. Jumonville, C. Peck Hayne, Jr., Gordon, Arata, Mccollam & Duplantis, L.L.P., New Orleans, for Respondent.
Before SCHOTT, C.J., and KLEES, BYRNES, ARMSTRONG and MURRAY, JJ.
BYRNES, Judge.
This action arises out of the alleged breach of a contract to convey a royalty interest. Plaintiff-respondent, CLK Company L.L.C. ("CLK"), a Louisiana limited liability company with its principal place of business in Orleans Parish, entered into a "Confidentiality Agreement" on December 4, 1992 with defendant-relator CXY Energy Inc. ("CXY"), a foreign corporation authorized to and doing business in Louisiana, with its principal business establishment in Lafayette Parish, wherein CLK agreed to provide geophysical and geological services (consisting of information CLK refers to as trade secrets) to relator in exchange for a 3.125% of 8/8ths overriding royalty interest, should relator acquire an interest or the right to acquire an interest in the property that is the subject of the information furnished by CLK pursuant to the Confidentiality Agreement.
CLK filed this suit on February 14, 1997 in Orleans Parish, alleging that relator, CXY, acquired an interest or right to acquire an interest in the property that was the subject of the Confidentiality Agreement, but CXY *1100 failed to give CLK the royalty due under that agreement.[1]
CLK filed a notice of lis pendens in Vermilion Parish, on February 19, 1997, notifying all that it had filed suit relating to rights (operating agreements) recorded in the conveyance records of Vermilion Parish.
Relator filed a declinatory exception of improper venue on January 21, 1998, claiming that venue was proper in Vermilion Parish, where the immovable property subject to the royalty interest at issue is located, or Lafayette Parish, the parish where its principal business establishment is located, but was not proper in Orleans Parish where plaintiff filed these proceedings. The trial court denied the exception on March 6, 1998 without furnishing reasons. Relator timely noticed its intention to seek writs to review the denial of its venue exception.
Relator claims that, pursuant to La. C.C.P. art. 80, CLK's action can only be filed in Vermilion Parish, the parish where the immovable property, (the overriding royalty interest) which is the subject of the suit is situated, or, pursuant to LSA-C.C.P. art. 42, in Lafayette Parish, the parish where relator's principal business establishment is located.
The general rules of venue under LSA-C.C.P. art. 42 provide that suit against a foreign corporation licensed to do business in Louisiana "shall be brought in the parish where its primary place of business in the state is located or in the parish designated as its principal business establishment in its application to do business in the state." CLK contends that CXY is a foreign corporation, but CLK does not contend that CXY's primary place of business is Orleans Parish. Nor does CLK contend that CXY's principal business establishment is in Orleans Parish. Therefore, if this Court were to find that the venue provisions of LSA-C.C.P. art. 42 were controlling, venue in Orleans Parish would not be proper.
However, CLK maintains that its action is based on a contract. LSA-C.C.P. art. 76.1 permits contract actions to be brought where the contract was executed or where work under the contract is performed. It is not contested that the contract was entered into in Orleans Parish where this suit was filed.
CXY counters that CLK's suit is pervaded by its claim for the overriding mineral royalty.
In its petition, CLK seeks recovery under three categories it denominates "Counts." "Count 1" entitled "MISAPPROPRIATION OF TRADE SECRETS" purports to seek damages for misappropriation of trade secrets, i.e., the geophysical and geological information furnished in exchange for the overriding royalty. "Count 2" entitled "CLAIM FOR DAMAGES FOR BREACH OF CONTRACT AND/OR UNJUST ENRICHMENT OR IN THE ALTERNATIVE FOR SPECIFIC PERFORMANCE" purports to seek damages for breach of contract and/or unjust enrichment or, in the alternative, specific performance. "Count 3" entitled "DECEPTIVE TRADE PRACTICES" purports to seek damages for deceptive trade practices.
CLK's case is basically one for the alleged failure of CXY to convey this overriding royalty interest to CLK. Not only would the conveyance of the overriding royalty have satisfied CLK's claim for breach of contract and/or unjust enrichment or, in the alternative, specific performance ("Count 2"), but it would also have obviated CLK's "Count 1" claims for misappropriation of trade secrets (the geophysical and geological information). In other words, CLK does not complain that CXY stole it trade secrets. CLK acknowledges that it furnished the trade secrets (geological information) voluntarily. In essence, CLK's only complaint in "Count 1" is that it was not paid the agreed upon overriding royalty in exchange for the "trade secrets"the same overriding royalty that is the subject of "Count 2."
Likewise, "Count 3" of CLK's petition asserting a claim for unfair and deceptive trade *1101 practices alleges no additional facts. "Count 3" merely seeks to characterize as deceptive trade practices the previously pled facts, i.e., the use of CLK's "trade secrets" without the allegedly agreed upon payment by CXY of the overriding royalty interest.
Thus, although CLK's petition purports to seek different remedies under different theories of recovery, it really complains of only one thingthe failure to convey the overriding royalty to CLK. CLK alleges no facts upon which to base its claim for recovery other than the fact that it furnished technical information for which it did not receive the allegedly agreed upon compensation in the form of the overriding royalty. Had CXY conveyed the overriding royalty, CLK would have had no claim under any of its various theories of recovery. Thus, one way of looking at CLK's claim is to characterize it as essentially one for the overriding royalty, and the overriding royalty should govern the venue. This fact aids in the disposition of this case because neither the legislation providing for recovery for misappropriation of trade secrets (LSA-R.S. 51:1431 et. seq.) nor the legislation providing for recovery for unfair trade practices (LSA-R.S. 51:1401 et seq.) contain any special venue provisions.
"A mineral right is an incorporeal immovable.... The situs of a mineral right is the parish or parishes in which the land burdened is located." LSA-R.S. 31:18. A mineral royalty is a mineral right. LSA-R.S. 31:16. Overriding royalties are classified as incorporeal immovables. Terry v. Terry, 565 So.2d 997, 1000 (La.App. 1 Cir. 1990). Consequently, CXY contends that CLK's claim should be treated for venue purposes as a claim for an immovable. LSA-C.C.P. art. 80 provides in pertinent part:
A. The following actions may be brought in the parish where the immovable property is situated or in the parish where the defendant in the action is domiciled:
(1) An action to assert an interest in immovable property, or a right in, to, or against immovable property, except as otherwise provided in Article 72.[2]
If LSA-C.C.P. art. 80A(1) governs the venue exclusively, then venue must be in Vermilion Parish, the situs of the overriding royalty, because the only other alternative venue permitted by Article 80 is "the parish where the defendant in the action is domiciled" and it is uncontested that the defendant, CXY, is a foreign corporation domiciled out of state.
But CXY does not dispute the allegations contained in CLK's petition that the contract between relator and CLK was executed in Orleans Parish and that a "substantial amount of the work performed by CLK under the terms of the contract was performed in Orleans Parish." LSA-C.C.P. art. 76.1 provides for venue where the contract is executed or where work is performed under the contract. CXY counters that LSA-C.C.P. art. 76.1 is not applicable to most of the claims asserted by CLK because CLK's claims for misappropriation of trade secrets, unjust enrichment and unfair trade practices, are not actions on a contract. CXY further contends that even assuming that there are aspects of CLK's claim that fit both LSA-C.C.P. arts. 76.1 and 80, LSA-C.C.P. art. 45(1) mandates that LSA-C.C.P. art. 80 governs exclusively. In other words, when both LSA-C.C.P. art. 76.1 and 80 A(1) apply, the plaintiff is not given the option of choosing the venue under LSA-C.C.P. art. 76.1 in preference to 80 A(1). LSA-C.C.P. art. 45(1) mandates that when both of these provisions apply with conflicting results, or when both articles 80 and 42 apply with conflicting results, then article 80 "governs the venue exclusively."[3] In CLK's memorandum in *1102 opposition to relator's exception of improper venue, CLK admits that if La. C.C.P. art. 80 were applicable, it "may trump article 76.1." However, CLK maintains that Article 80 is not applicable.
CLK contends that even assuming the theories of recovery for misappropriation of trade secrets, unfair and deceptive trade practices and unjust enrichment are not theories on a contract, and assuming further that the mineral royalty issue inserts an "immovable" component in the litigation, the contract component of CLK's claim is sufficient to create venue for the entire suit in Orleans Parish because, "when a plaintiff institutes an action on more than one theory of recovery, arising out of one factual circumstance, and venue is proper as to any theory, the court has venue to decide any or all claims." Metcalf v. Pool & Home Care, 467 So.2d 610, 612 (La.App. 3 Cir.1985). See also Smith v. Baton Rouge Bank & Trust Co., 286 So.2d 394 (La.App. 4 Cir.1973). The theories of recovery asserted by CLK arise out of one factual circumstance. Therefore, CLK argues that it is entitled to bring the instant suit in Orleans Parish under La. C.C.P. art. 76.1, based solely on its claim for damages for breach of contract.
However, in Smith v. Baton Rouge Bank, 286 So.2d at 396 this court noted that:
The venue of an action of nullity of judgment is exclusively [emphasis added] the parish of the court which rendered the judgment; C.C.P. art.2006 and 44.
* * * * * *
Our case is one in which the claim for unjust enrichment is based on factual allegations that are at the same time the basis for the claim for an injunction against execution of the district court's deficiency judgment as extinguished (and as to the latter claim we have held venue proper).
We believe economy of judicial administration opposes dual (or multiple) trials of the same factual circumstances where one trial should serve to determine both (a) whether the execution of the earlier judgment should be enjoined (as extinguished by "overall sales") and (b) whether defendant owes plaintiff an accounting for "unjust enrichment" resulting from "overall sales."
* * * * * *
We conclude that where venue is proper as to one claim, the disposition of which will necessarily affect a related second claim as to which venue might otherwise be improper, the court has the authority to decide both claims in the interest of efficient judicial administration, and therefore should overrule an exception of venue.
It is significant that when this Court stated in Smith v. Baton Rouge Bank that a claim for which venue might otherwise be improper can be joined with one for which the venue is proper, the claim upon which the venue was based was brought in the venue which this Court found to be the "exclusively" proper venue for that claim. In other words, implicit in this Court's decision in Smith v. Baton Rouge Bank is the finding that where a claim has an "exclusive" venue, that "exclusive venue" must control the location of related claims if the alternative venue for those related claims is not mandatory. By analogy, under the facts of the instant case, LSA-C.C.P. art. 45 dictates that the LSA-C.C.P. art. 80 venue of CLK's claim for the overriding mineral royalty "governs the venue exclusively" in preference to the situs of CLK's contractual claim under LSA-C.C.P. art. 76.1. Consequently, the exclusive venue of the overriding royalty interest can *1103 simultaneously create a forum for the contractual claim, but the non-exclusive venue for the contractual claim cannot create a venue for the overriding royalty claim.
Likewise, in Metcalf v. Pool, supra, when the court permitted the plaintiffs to bring both their contractual claim and their tort claim in the venue proper for the tort claim, there was no question of "exclusive" venue as to one claim or the other. Additionally, we note that the cases cited in Metcalf do not involve "exclusive" venue situations.
CLK's approach to venue would effectively repeal the language of LSA-C.C.P. art. 45(1) that says that LSA-C.C.P. art. 80 "governs the venue exclusively" when LSA-C.C.P. art. 76.1 would lead to a different venue. If a party could always piggyback immovable claims to the situs of contractual claims, LSA-C.C.P. art. 45(1) would become meaningless. Moreover, the fact that LSA-C.C.P. art. 45(2) and (3) allow the action to be brought "in any venue provided by any applicable article", when contrasted with the exclusive venue language of LSA-C.C.P. art. 45(1), only serves to highlight and emphasize the intentional significance of LSA-C.C.P. art. 45(1)'s exclusive venue language.
There is no merit to the argument that the 1984[4] amendment to LSA-C.C.P. art. 80 intended to implicitly repeal the "exclusive" venue established by LSA-C.C.P. art. 45(1). LSA-C.C.P. art. 45(1) was not amended when LSA-C.C.P. art. 80 was amended, and the failure to do so was intentional. The substitution of the permissive "may" in the 1984 amendment for the mandatory "shall" was intended to be permissive only in the sense that the plaintiff now has the option of bringing the suit not only at the situs of the immovable, but also at the situs of the defendant's domicile. The use of "may" was not intended to permit venue under all alternative provisions. Had it been the intention of the legislature in 1984 to implicitly overrule the "exclusivity" provisions of LSA-C.C.P. art. 45(1) as applied to LSA-C.C.P. art. 80 A it would not have been necessary for the legislature in Act 541 of 1989 to specifically provide in LSA-C.C.P. art. 80 A(3) that the venue for an action on a lease of immovable property "shall be in addition to any other venue provided by law for such action." [Emphasis added.] It is both highly significant and no accident that LSA-C.C.P. art. 80 A(1) does not state that an action to assert an interest in immovable property "shall be in addition to any other venue," while at the same time LSA-C.C.P. art. 80 A(3) provides that the venue for lease actions "shall be in addition to any other venue."
But CLK does not assert title to the overriding royalty. This is not a title dispute. If it were, the resolution of the venue issue would be much simpler. CLK prefers to characterize its claim as a claim for moneya purely personal right. Moreover, even if the overriding mineral royalty is an immovable, CLK is not asserting title to that immovable, but only a contractual right arising out of the Confidentiality Agreement. Normally we think of contractual rights as personal incorporeal rights. Implicit in CLK's argument is the contention that the rights it seeks to assert are personal as opposed to real. But in making this argument, CLK seems to confuse the categories of real versus personal, which refer to the nature of rights and actions, with the categories of movable versus immovable, which refer to the object of rights and actions. Employing civilian analysis, the effect of CLK's argument is to imply that where the nature of the right is personal, its object cannot be immovable. If CLK's argument is correct, then LSA-C.C.P. art 80 A(1) cannot apply because it refers to immovables. Thus, the issues raised by the litigants force this Court to analyze the significance of the categories of "real" versus "personal" rights and actions and "movable" versus "immovable" rights and actions.
Patrimonial rights are susceptible of pecuniary evaluation and form part of a *1104 person's patrimony.... [P]atrimonial rights are either personal or real.
[Emphasis added.]
A real right is a right that a person has in a thing, a matter of property law. A personal right is a right that a person has against another person to demand a performance, a matter of the law of obligations. In this light, despite certain similarities, the two species of rights appear to be of a different nature. According to appearances, a usufructuary and a lessee seem to have the use and enjoyment of a house in much the same way. But, technically, the usufructuary has a right in the enjoyment of a house; the lessee has a right against the owner of a house to let him enjoy it. One [the usufructuary] has a real right and the other [the lessee] a personal right. [Emphasis original.]
Yiannopoulos, Louisiana Civil Law TreatiseProperty, Sec. 201 at p. 367 (Third Edition). Thus both personal rights and real rights are susceptible of monetary evaluation. A claim for a real right can be compensable in money.
Accordingly, the fact that CLK's claim is compensable in money does not preclude it from being categorized as an immovable or as a real right, and a party cannot transform an immovable or real right into a purely personal right for venue purposes by simply suing for the monetary value of the immovable right.
A personal right [emphasis original] may be defined as the legal power that a person (obligee) has to demand from another person (obligor) a performance consisting of giving, doing, or not doing a thing. The Louisiana Supreme Court has declared that "a personal right ... defines man's relationship to man and refers merely to an obligation one owes to another which may be declared only against the obligor. His entire patrimony may be seized and sold for the satisfaction of the obligee's claim.
* * * * * *
The Supreme Court has declared that "the term `real right' under the civil law is synonymous with proprietary interest, both of which refer to a species of ownership. Ownership defines the relation of man to things and may, therefore, be declared against the world." The use of the term proprietary interests may be confusing. The Supreme Court apparently intended to define real rights as dismemberments of ownership.
* * * * * *
But differences apart, real rights and personal rights are not such pure concepts as to exclude the existence of several categories of rights that partake of the nature of both and, therefore, defy accurate classification.
Yiannopoulos, Louisiana Civil Law TreatiseProperty, Sec. 201 at p. 367 (Third Edition 1991); See also Harwood Oil & Mining Company v. Black, 240 La. 641, 124 So.2d 764, 767 (1960).
The "nature" of a personal right is an obligation, whereas the "nature" of a real right is one of ownership and its dismemberments. This is to be distinguished from the "object" of those rights which may be either movables or immovables depending on to what the right pertains. For example, a party may have ownership rights which are real rights in both movables and immovables. Pure civilian theory would recognize the category of "personal immovable rights" as well as the category of "real movable rights." In other words, according to civilian theory, a personal action can also be an immovable action if the object of the action is an immovable.
LSA-C.C.P. art. 80 A(1) applies to all immovable actions. Therefore, this venue article is concerned not with the nature of the action, personal versus real, but the object of the action, movable versus immovable. Consequently, if we determine that the object of the action is immovable, LSA-C.C.P. art. 80 A(1) applies and the nature of the action, whether personal or real is irrelevant:
In the Louisiana Code of Civil Procedure, a civil action is defined as "a demand for the enforcement of a legal right." [LSA-C.C.P. art. 421.] Such an action may be personal, real, or mixed. [LSA-C.C.P. art. 422.] A personal action is "one brought to *1105 enforce an obligation against the obligor, personally and independently of the property he may own, claim or possess" [LSA-C.C.P. art. 422]; a real action is "one brought to enforce rights in, to, or upon immovable property" [LSA-C.C.P. art. 422.]; and a mixed action is "one brought to enforce both rights in, to or upon immovable property, and a related obligation against the owner, claimant, or possessor thereof." [LSA-C.C.P. art. 422.] These definitions confuse the notions of real[5]actions and immovable[6]actions. [Emphasis added.]
According to the Civil Code and well-established civilian terminology, a real action is one for the enforcement of a real right, and a personal action is one for the enforcement of a personal right. Classification of an action as real or personal thus depends on the nature[7] of the right that the action tends to enforce. A real or personal action may be movable or immovable depending on the object of the right that the action tends to protect or enforce. Thus an action for the enforcement of a real right in immovable property is an immovable real action, and an action for the enforcement of a real right in movable property a movable real action. Conversely, an action for the enforcement of a personal right relating to immovable property is an immovable personal action, and an action for the enforcement of a personal right relating to movable property a movable personal action.
Yiannopoulos, Louisiana Civil Law TreatiseVol. 2Property, supra, at p. 483-484.
Moreover, in Louisiana, contrary to pure civilian theory, where rights to immovables are concerned, all such rights are treated by the Code of Civil Procedure as real immovable rights. In other words, the Code of Civil Procedure fails to draw any distinction between personal immovable actions and real immovable actions, preferring instead to treat them all under the category of real immovable actions. "As enacted article 422 of the Code of Civil Procedure renders real actions synonymous with immovable real actions...." Yiannopoulos, Real Actions in Louisiana and Comparative Law, 25 La. L.Rev. 589, 616 (1965).
LSA-C.C.P. art. 422 states that:
A personal action is one brought to enforce an obligation against the obligor, personally and independently of the property he may own, claim, or possess.
A real action is one brought to enforce rights in, to, or upon immovable property. [Emphasis added.]
A mixed action is one brought to enforce both rights in, to, or upon immovable property, and a related obligation against the owner, claimant, or possessor thereof.
The language highlighted above in LSA-C.C.P. art. 422 echoes the language of LSA-C.C.P. art. 80 A(1). Moreover, it is difficult to consider CLK's claim for specific performance of CXY's obligation to convey the immovable mineral interests as being independent of the property CXY owns, claims, or possesses, which quality CLK's claim would need in order to be classified as purely personal. It is only because CXY has allegedly acquired an interest in immovable property subject to the Confidentiality Agreement that CLK brings this claim, and only because CXY has refused to convey immovable property (the overriding royalty interest) that CLK filed this suit.
"[A]ctions for the enforcement of the right of ownership, dismemberments of ownership [e.g., usufruct, etc.] and real security are real actionsmovable or immovable." Yiannopoulos, supra, at p. 476. Here Yiannopoulos tries to make the point "real right or action" should not be confused with "real estate", i.e., immovables. Thus Yiannopoulos would characterize the nature of the contractual component of CLK's claim as personal. But he would also recognize that the object of that contract, the overriding royalty interest, was an immovable. And as has already been pointed out, the Code of Civil Procedure in disregard of the finer points of civilian theory, has chosen to treat the terms "real" and *1106 "immovable" as equivalent terms, meaning that for venue purposes all rights with an immovable object are to be treated as immovable real rights, i.e., the situs of the immovable governs under LSA-C.C.P. art. 80 A(1). Moreover, Yiannopoulos states that: "Mixed actions for purposes of venue, are subject to the same rules as immovable actions." Id. at p. 484. What Yiannopoulos is trying to say here is that under LSA-C.C.P. art. 422 where an action is brought to enforce a right in, to, or upon immovable property, such as CLK's claim for the overriding mineral royalty in the instant case, along with a related obligation against the owner, claimant, or possessor thereof, which would be CLK's contractual claim against CXY arising out of the Confidentiality Agreement, the immovable component of the claim would determine the exclusive venue situs under LSA-C.C.P. art. 80 A(1) and LSA-C.C.P. art. 45(1). Therefore, it is immaterial whether we consider CLK's claim purely one for an immovable, or a personal obligation with an immovable objectthe result for venue purposes is the same. For the sake of completeness, it should be noted that the LSA-C.C.P. art. 422 definition of "mixed action" perpetuates the affront to pure civilian theory found in the immediately preceding definition of "real action." Technically, "mixed action" should be defined by the dual nature of the action, real and personal, without reference to the object of the action, movable or immovable. However, the Louisiana Legislature in enacting LSA-C.C.P. art. 422 is entirely within the scope of its authority in choosing to disregard the niceties of civilian theory.
Yiannopoulos states that:
In France, the most important practical consequence of the classification of an action as personal, real, or mixed relates to the territorial competence of the court, that is, venue. In Louisiana, however, venue is determined by the nature of the property involved in the litigation [movable or immovable] rather than by the nature of the right that is sought to be enforced or by the classification of the action as personal real, or mixed. [Emphasis added.]
Mixed actions, for purposes of venue, are subject to the same rules as immovable actions. The category of mixed actions has thus mostly doctrinal significance in Louisiana. In accordance with French law, under which the plaintiff in a mixed action has a choice of forum, the plaintiff in a mixed action under Louisiana law may opt for the forum rei or the general forum [i.e., the defendant's domicile], as provided in Article 80 of the Code of Civil Procedure. Being devoid of procedural significance, the category of mixed actions seems to be fully dispensable in Louisiana. [Emphasis added.]
Yiannopoulos, Louisiana Civil Law TreatiseVol. 2Property, Sec. 248 at p. 486 (Third Edition 1991).
In Smith v. Bickley, 348 So.2d 757, 758 (La.App. 1 Cir.1977), citing former LSA-C.C. art. 3548, the court held that: "An action for specific performance of a real estate contract is a real action." Former LSA-C.C. art. 3548 stated that: "All actions for immovable property ... are prescribed by thirty years." Thus, Bickley, in effect, holds that an action for specific performance is an action for immovable property, subject to thirty years prescription in spite of the contractual nature of the claim. However, former LSA-C.C. art. 3548 is a mistranslation from the French and should have read: "All actions in revendication of the ownership of an immovable... are prescribed by thirty years ..." The revendication action was one of the traditionally recognized real actions. In any event, the fact that the original French text of former LSA-C.C. art. 3548 may not have contemplated actions for specific performance, does not change the holding in Bickley.
LSA-C.C. art. 470 provides that:
Rights and actions that apply to immovable things are incorporeal immovables. Immovables of this kind are such as personal servitudes established on immovables, predial servitudes, mineral rights, and petitory or possessory actions.
The 1978 Revision Comment to LSA-C.C. art. 470 states in pertinent part that:
The enumeration of incorporeal immovables is merely illustrative. All rights and *1107 actions that have an immovable object are incorporeal immovables. Thus, the right of ownership of an immovable is an incorporeal immovable. Personal servitudes established on immovables are: usufruct, habitation, and rights of use.
Former LSA-C.C. art. 471 listed certain incorporeal immovables:
The following are considered as immovable from the object to which they apply:
The usufruct and use of immovable things.
A servitude established on an immovable estate.
An action for the recovery of an immovable estate or an entire succession.
The first two categories of incorporeal immovables described above in former LSA-C.C. art. 471 are described as "fragments of ownership" by Yiannopoulos at 22 La.L.Rev. 517, 549 (1962).
Current LSA-C.C. art. 470 and former LSA-C.C. art. 471 imply that incorporeal immovables are pre-existing rights or titles that do not include the contractual right to acquire title. A contract to purchase an immovable is not equivalent to title to that immovable, nor even to what Yiannoppoulos referred to as a "fragment of the right of ownership" in 22 La. L.Rev. 517, 549 (1962), or to what Brash, Incorporeal Immovables, 19 Tul. L.Rev. 610 (1945) referred to as the "dismemberment" of ownership. The right or action that CLK seeks to enforce is in the nature of a consensual obligation to do, in this case the obligation to convey the overriding royalty interest in the event that CXY acquired an interest in property that was the subject of CLK's "trade secret" geological information.
Unfortunately, LSA-C.C. art. 470 and the comment thereunder as well as former LSA-C.C. art. 471, fail to alter the fact that Code of Civil Procedure LSA-C.C.P. art. 80 A(1) and LSA-C.C.P. art. 422 refer to immovables in such sweeping and all encompassing terms ("interest in immovable property, or a right in, to, or against immovable property" and "rights in, to, or upon immovable property") that it is hard to argue against the Bickley holding. For example, in McMikle v. O'Neal, 183 So.2d 377, 380 (La.App. 2 Cir.1966), the court stated that:
We cannot subscribe to the contention that this action for specific performance which has for its principal purpose the transfer of title to real property should not be governed by what appears to be the very plain and explicit mandatory provision [LSA-C.C.P. art. 80 A(1)] above quoted.
It has been held that an action to compel the purchaser to pay the sum due under an agreement to purchase immovable property was not a claim for immovable property, and, therefore, LSA-C.C.P. art 80 did not govern venue. Grezaffi v. Smith, 572 So.2d 183 (La.App. 1 Cir.1990). The Grezaffi court focused on the "primary purpose of the suit" which it found was "not to obtain the transfer of immovable property, but instead, to recover the sum allegedly due from the purchase agreement." Id., at 184. However, the Grezaffi court declared that exceptions to the general rule of venue must be strictly construed and the party claiming the benefit of the exception must be clearly within the exception, citing Hawthorne Oil and Gas Corp. v. Continental Oil Co., 377 So.2d 285 (La. 1979). Id. Hawthorne has since been overruled on the issue of strict construction of the exceptions to the general venue provisions by Jordan v. Central Louisiana Elec. Co., Inc., 95-1270, p. 2 (La.6/23/95); 656 So.2d 988, 989, which declared that the exceptions to venue found in LSA-C.C.P. art. 71 et seq. were to read in pari materiae with the general rules of venue, thus providing additional venue options. To the same effect as Grezaffi see Petro Point 5000 v. deGraauw, 520 So.2d 1025 (La.App. 3 Cir.1987). Both Grezaffi and Petro suggest, but do not hold, that the vendee's claim for specific performance of an agreement to purchase an immovable is an immovable right:
We believe that the plaintiff in McMikle was in fact asserting an "interest in ... or a right in, [or] to ... immovable property" in Tensas Parish. La.Code Civ. Proc. art. 80, supra."

Petro Point 5000, at 1027.
In Petro Point, at p. 1028, the court makes the point that:

*1108 It is understandable that an owner of immovable property not domiciled in the parish in which the immovable is located might be called upon to defend in the courts of the situs of the property his interest in the immovable.
In G.C. & K.B. Investments, Inc. v. Otillio, 95-987, p. 7 (La.App. 5 Cir. 3/26/96); 672 So.2d 975, 978, writ denied 96-1497 (La.9/20/96); 679 So.2d 441, the plaintiff filed an action to collect rent and property taxes owed under a sub-lease, and argued that it was an action on a contract under LSA-C.C.P. art. 76.1 for venue purposes. The court held that, even assuming LSA-C.C.P. art. 76.1 was applicable, it conflicted with LSAC.C.P. art. 80(A)(3), providing for venue for actions arising from the breach of a lease of immovable property. The court held that Article 80 was "the exclusive venue when there is a conflict between it and C.C.P. art. 42 and C.C.P. arts. 71 through 77."
CLK submits, however, that LSA-C.C.P. art. 80(A)(1) does not apply to a claim for specific performance of a contract for the assignment of an interest in an immovable made solely in the alternative. While the pleading of alternative theories and claims is permitted under the Code of Civil Procedure pursuant to LSA-C.C.P. art. 892 (which refers to alternative "causes of action"), there is no persuasive authority that the venue rules do not apply to alternative claims or theories, or that the venue conflict rules do not apply to alternative claims or theories.
CLK does not really have multiple causes of action. What CLK has are multiple theories of recovery arising out of one cause of action:
The distinction between an action asserting several demands based on the operative facts of one transaction or occurrence (which demands must be cumulated) and cumulated actions based on the operative facts of several separate and distinct transactions or occurrences (which causes of action may be cumulated) is at the heart of the problem in this case. There is only one cause of action (although several demands or theories of recovery may be asserted thereon) when the operative facts of one transaction or occurrence give rise to the plaintiff's right to assert the action against the defendant.
Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1238-39 (La. 1993). Or as was stated in Harris v. Bardwell, 373 So.2d 777, 781-782 (La.App. 2 Cir. 1979):
If in one lawsuit against the same defendant[s], the plaintiff alleges factually only one circumstance, and notwithstanding that plaintiff may allege two or more claims or theories of recovery arising out of the circumstance, the lawsuit embodies but one [emphasis original] action.... On the other hand, if the plaintiff joins two lawsuits in one, each supported by its own factual circumstance, a true cumulation has occurred....
There is but one factual circumstance or grounds for this lawsuit: the plaintiff's purchase of a boat with a defectively installed seat and the plaintiff's resulting injury. As against the seller and manufacturer, plaintiff has alleged several claims or theories of recovery (redhibition, tort, products liability), but the dismissal of one claim or theory of recovery on a peremptory exception is not a dismissal of the factual circumstances or the grounds for the lawsuit (the action [emphasis added] under CCP 934).
In the instant case, CLK presents several theories of recovery, but they all arise out of the same transaction and the failure of CXY to convey the overriding royalty interest. It is the immovable nature of this royalty interest and the fact that CLK's claim to the immovable overriding royalty is triggered by CXY's alleged acquisition of interests in immovables that are the object of the Confidentiality Agreement, that limits CLK's venue choices. Because CLK is both seeking damages on a contract and asserting an interest in immovable property, there is plainly a conflict between the venue provisions of Article 76.1 and Article 80. Regardless of CLK's purported theories of recovery, its claim remains essentially one for the overriding royalty interest which is a claim "asserting an interest in immovable property, or *1109 a right in, to, or against immovable property." As such, pursuant to Article 45(1), LSA-C.C.P. art. 80 "governs the venue exclusively." Venue is proper only in Vermilion Parish, where the immovable is situated.
We reach this conclusion because we believe that it is technically correct based on the foregoing analysis. However, in the aftermath of the Supreme Court's decision in Jordan, supra, declaring the venue exceptions to be in pari materiae with the general rules of venue, we can fathom no compelling public policy that mandates that the immovable aspect of a claim be given precedence for venue purposes over the contractual aspect of a claim for specific performance where title to the immovable has not yet passed.[8] Where the real nature of the action is arguably more contractual in nature[9] than one involving questions of title or ownership to immovables because the plaintiff does not claim title, but merely the contractual right to acquire title, we believe that venue at the situs of the confection of the contract is fully justified and is perhaps even more justified than venue in the parish of the of the mineral interests. We believe that in this post Jordan world, the "exclusive venue" provisions of LSA-C.C.P. art. 45(1) may be anachronisms and that Article 45(1) should be rewritten to conform with 45(2) and 45(3) which provide for non-exclusive venue options. However, it is within the province of the legislature and not that of this Court to make such a change, just as the legislature is not required to be a purist in matters of civilian legal theory.
Therefore, the trial court erred in denying relator's exception of improper venue. Accordingly, the judgment of the trial court is reversed and judgment is hereby rendered granting CXY's exception of improper venue. It is further ordered that the case be remanded to the trial court which is ordered to enter an order transferring the venue of this case to Vermilion Parish.
WRIT GRANTED; JUDGMENT REVERSED AND REMANDED
SCHOTT, C.J., concurs in the result.
*1110 KLEES, J., concurs with reasons.
ARMSTRONG, J., dissents for the reasons assigned by Judge MURRAY.
MURRAY, J., dissents with reasons.
KLEES, Judge, concurring.
The result reached by the majority is correct. Since there is a conflict between Articles 76 and 80, Article 45 states that in such cases article 80 is exclusive. The only applicable venue according to Article 80 is the situs of the immovable property. (Vermillion)
MURRAY, Judge, dissenting with reasons
Although I agree that this contract action asserts a right to an incorporeal immovable, I do not agree that it can be brought only in the parish where the immovable is situated. Article 80 of the Code of Civil Procedure, enacted to specify that suits asserting an interest or right in, to or against immovable property "shall be brought in the parish where the immovable property is situated...." was amended in 1984. The amendment provides that such suits "may be brought in the parish where the immovable property is situated or in the parish where the defendant in the action is domiciled [emphases added]. Unfortunately, the amendment, altering the general venue provision for actions relating to immovable rights from mandatory to permissive, was not accompanied by an amendment to Article 45(1). However, this failure does not negate the Legislature's intent that article 80 be permissive rather mandatory. That the Legislature recognizes the distinction between "shall" and "may" is demonstrated by its 1989 amendment to Article 80 adding paragraph (D), which provides that "[a]ny action to revoke a donation of immovable property shall be brought in the parish in which the property is located."
Where the law permits a plaintiff the choice of more than one venue option, I do not perceive a conflict that would necessitate reference to Article 45. Thus, under the clear, express language of Articles 76.1 and 80 A(1), this contract action, asserting a right to an interest in an incorporeal immovable, may be brought in either Orleans Parish or in Vermilion Parish. The plaintiff has chosen to file suit in Orleans Parish, and the trial court correctly denied the defendant's venue exception. For this reason, I respectfully dissent.
NOTES
[1] On March 24, 1997, relator removed the case to the U.S. District Court for the Eastern District of Louisiana. On July 18, 1997, the case was transferred to the U.S. District Court for the Western District. On January 5, 1998, on motion of CLK, the case was remanded to the Civil District Court for the Parish of Orleans.
[2] La. C.C.P. art. 72 is not applicable to this case. It refers to actions "in which a sequestration is sought, or an action to enforce a mortgage or privilege ..."
[3] LSA-C.C.P. art. 45 provides that:

The following rules determine the proper venue in cases where two or more articles in this Chapter may conflict:
(1) Article 78, 79, 80, 81, 82, or 83 governs the venue exclusively, if this article conflicts with any of Articles 42 and 71 through 77; [Emphasis added.]
(2) If there is a conflict between two or more Articles 78 through 83, the plaintiff may bring the action in any venue provided by any applicable article; and
(3) If Article 78, 79, 80, 81, 82, or 83 is not applicable, and there is a conflict between two or more of Articles 42 and 71 through 77, the plaintiff may bring the action in any venue provided by any applicable article.
Relator argued that venue is alternatively proper in Lafayette Parish under LSA-C.C.P. art. 42(4) where its primary place of business is located. However, the only alternative to the situs of the immovable permitted by Article 80 is the parish of the defendant's domicile. "Domicile" is not synonymous with "primary place of business." It is uncontested that the defendant, CXY, is a foreign corporation. By definition, CXY's domicile is not in the state of Louisiana. Therefore, Article 80 does not provide venue at CXY's primary place of business, and Article 45(1) does not permit venue at the defendant's primary place of business under Article 42(4) where that venue is not consistent with the venue provided by Article 80. Accordingly, there is no merit to CXY's argument that venue is alternatively proper in Lafayette Parish, the parish of its primary place of business.
[4] Prior to the enactment of Act 732 of 1984, LSA-C.C.P. art. 80 commenced with the statement that: "The following actions shall be brought in the parish where the immovable property is situated: ..." Act 732 of 1984 changed this language so that it now reads: "The following actions may be brought in the parish where the immovable property is situated or in the parish where the defendant in the action is domiciled:..." [Emphasis added.]
[5] Emphasis original.
[6] Emphasis original.
[7] Emphasis original.
[8] In a discussion of the parallel French law that is particularly apt to the instant case, Yiannopoulos states:

In the absence of a legislative definition, the Court of Cassation has declared mixed actions to be those "which involve, simultaneously, a controversy as to a real right and a personal right so that the judicial decision ... as to the existence of the personal right will also resolve the question of the existence of the real right." According to this definition, mixed actions are, in general, those brought for the performance of juridical acts involving transfer of ownership or creation of real rights in immovables, as well as those brought to secure the annulment, recession, resolution, or revocation of such juridical acts.
Id., Sec. 243 at p. 478-479.
In the instant case the determination of CLK's personal right will almost certainly resolve the question of the existence of CLK's right to the overriding royalty interest. However, footnote five to the above quotation suggests that where title has not yet passed under the contract the result should be different:
French courts have held that the action of the purchaser of an immovable against the vendor for the performance of the contract of sale is a mixed action when the ownership of the immovable has been transferred to the purchaser. In this case the purchaser exercises simultaneously a real action based on his ownership and a personal action based on the contract of sale.... If ownership has not been transferred, the action of the purchaser is personal.
[Emphasis added.]
Thus the French view appears to be that an action by the vendee for specific performance of a contract to purchase an immovable (e.g., an overriding royalty interest) where the title has not yet passed, is a personal action contrary to the holding in Smith v. Bickley, 348 So.2d 757, 758 (La.App. 1 Cir.1977), that such an action is a real action. Accordingly, a French court would presumably find venue at the situs of the contract rather than at the situs of the immovable where title had not yet passed. However, for venue purposes in Louisiana the distinction between real and personal is not nearly as significant as the distinction between movable and immovable. As we have stated previously, even were we to treat CLK's claim as personal, it would also be treated as an immovable, and under LSA-C.C.P. art. 422 would be transformed into a real immovable because all immovable rights are treated as real rights and vice versa under LSA-C.C.P. art. 422 and LSA-C.C.P. art. 80.
[9] In support of this decision we note that perhaps the majority of the paragraphs of CLK's petition involve allegations concerning various mineral leases that could, during the course of the litigation, conceivably raise title questions that properly belong at the situs of the property. We also note that CLK has apparently filed a notice of lis pendens at the situs of the mineral interests, which is in a sense an acknowledgment of the "immovable" component of its action.